IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| VIVIMETRIX, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: 1:24-cv-03046-SAG |
| MONUMENT TRADERS ALLIANCE, LLC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Vivimetrix, LLC ("Vivimetrix") sued Monument Traders Alliance, LLC ("MTA") for damages arising out of a dispute relating to the parties' Software Service Agreement ("the Agreement") providing MTA an exclusive license to use Vivimetrix's software. MTA has filed a partial Motion to Dismiss the Complaint ("Motion"), ECF 27. The issues have been fully briefed, ECF 28, 29, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the following reasons, MTA's Motion will be granted in part and denied in part.

I.   BACKGROUND

The following facts are derived from the Complaint, ECF 1, and must be taken as true for purposes of evaluating MTA's Motion. Vivimetrix developed and offers the Vivimetrix Software Service ("VSS"), "a web application that consists of Vivimetrix harmonic pattern recognition and prediction algorithm, web-based user dashboard interface, and web-based account management interface." *Id.* ¶ 6. The VSS tracks "bullish" or "bearish" stock patterns by identifying "W" or "M" patterns in the stock movement. *Id.* ¶ 11. It notifies users when its algorithm identifies a "W" or

"M" in the user's stock symbols. *Id.* Vivimetrix maintains the VSS architecture as confidential. *Id.* ¶ 12.

MTA, a financial publisher and online advisory service, offers subscription services for options traders. *Id.* ¶ 7. According to the Complaint, MTA uses a unique webpage address and "until recently, MTA's main offerings were trade recommendations and alerts based on market intelligence gathered by its trade experts." *Id.* ¶¶ 7, 8. As of July 3, 2022, MTA offered four services: "(1) The War Room, (2) Insider Matrix, (3) Trade of the Day Plus, and (4) Trade of the Day" *Id.* ¶ 9. During that time, MTA's Head Trading Technician, Bryan Bottarelli, manually searched for W and M patterns which he used in his technical analysis and recommendations to users. *Id.* ¶ 13.

On July 15, 2022, Vivimetrix and MTA executed the Agreement, granting MTA an exclusive financial publishing license to use the VSS as part of its offerings to its subscribers. *Id.* ¶ 10. The Agreement provided that MTA would pay monthly fees to Vivimetrix in exchange for the license, based on the number of users. *Id.* The Agreement further provided that MTA would not "reverse engineer, disassemble, decompile, decode, or adapt the [VSS]…in whole or in part" *Id.* ¶ 17.

In or about November, 2022, MTA started actively offering the VSS to its users pursuant to its license, calling it MTA's "ProfitSight" service." *Id.* ¶¶ 27–29. MTA's "Our Services" URL included a hyperlink to access and use the VSS, as "ProfitSight." *Id.* ¶ 28. In December 2022, Vivimetrix prepared its first invoice to MTA for its use of the VSS, based on its data regarding the number of users of its service, but MTA advised that it would provide its own user counts to Vivimetrix. *Id.* ¶ 30. As early as January 30, 2023, unbeknownst to Vivimetrix, MTA began describing "ProfitSight" on its website as "Our proprietary ProfitSight software." *Id.* ¶ 32.

On March 20, 2023, Bottarelli appeared on a financial podcast and explained that before the VSS, since the early 1970s, no one had successfully automated the search for M and W patterns. *Id.* ¶ 14. Bottarelli acknowledged during the podcast that the VSS was "a game changing, revolutionary piece of software that has withstood the test of time." *Id.*

On August 8, 2023, Bottarelli and another MTA employee produced and posted a video on MTA's website demonstrating "MTA's First-Ever AI Powered Trading Tool," which was the VSS. *Id.* ¶ 33. Beginning in November, 2023, when MTA's first "ProfitSight" users would be expected to renew for a second year, MTA began failing to make payment for all of the monthly fees it owed to Vivimetrix under the Agreement. *Id.* ¶¶ 34, 35. By April 1, 2024, MTA owed Vivimetrix $518,584.71 pursuant to the Agreement's terms. *Id.* ¶ 36. But in April, 2024, MTA stopped making the payments entirely. *Id.* ¶ 37. Nevertheless, MTA's users continued to use the VSS and Vivimetrix continued to provide access to the MTA users. *Id.* ¶ 37.

On June 15, 2024, MTA sent Vivimetrix a notice of non-renewal, which states "Per section 12.4 term of our contract agreement, we need to give you 30-day notice before our next contract renewal. This letter is to tell you we do not plan to renew." *Id.* ¶ 38. On July 10, 2024, before the full thirty days had expired, MTA began actively routing its users away from VSS towards a new (but nearly identical) "ProfitSight" program residing on a separate server. *Id.* ¶ 39. Also in July, 2024, MTA began aggressively marketing ProfitSight and advised its members on an MTA bulletin board that it would be filming a demo detailing ProfitSight's new benefits and features. *Id* ¶ 40. Later in July, 2024, MTA continued marketing its ProfitSight "upgrades" in videos and live online demonstrations. *Id.* ¶¶ 41, 42.

MTA still owes Vivimetrix $631,085.52 for services rendered pursuant to the terms of the Agreement. *Id.* ¶ 43. Vivimetrix alleges that MTA misappropriated, reverse-engineered, and used

VSS to benchmark the competing "ProfitSight" service it created. *Id.* ¶ 44. The "upgraded" ProfitSight is nearly identical to VSS in both structure and functionality, and the language describing the subscription services MTA offers for its "ProfitSight" is near-identical to the language Vivimetrix used in the Agreement describing VSS. *Id.* ¶¶ 45–48.

## II.     STANDARD OF REVIEW

MTA contends that dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(6), which allows a defendant to test the legal sufficiency of a complaint. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

Vivimetrix has attached the Agreement as an exhibit to its Complaint. *See* ECF 1-2. MTA has also attached a patent application to its Motion. At the motion to dismiss stage, courts generally do not consider extrinsic evidence. It is well-recognized, however, "that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Reamer v.*

*State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (quoting *Goines*, 822 F.3d at 166). A document is "integral" where its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation marks omitted) (emphasis removed). Applying those standards, the Agreement is integral to the Complaint because its existence forms the basis of Vivimetrix's claim. No party has challenged their authenticity, and this Court accordingly deems it appropriate to consider them in adjudicating Defendants' Motions, without converting the Motion into one seeking summary judgment. Because this Court does not rely on the patent application attached by MTA, it need not consider whether it would also satisfy this standard.

### III.  DISCUSSION

Vivimetrix asserts seven separate counts against MTA. MTA seeks dismissal of all but one of the counts, and also seeks dismissal of a number of Vivimetrix's forms of requested relief. This Court addresses each contention below:

    **1.  (Count One) Unjust Enrichment**

Despite the existence of the Agreement between the parties, Vivimetrix first seeks relief under a theory of unjust enrichment. Unjust enrichment requires three elements:

> 1. A benefit conferred upon the defendant by the plaintiff;
> 2. An appreciation or knowledge by the defendant of the benefit; and
> 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151–152, 757 A.2d 108, 113 (2000) (quoting *County Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n. 7, 747 A.2d 600, 607 n. 7 (2000)).

MTA argues that Vivimetrix cannot pursue a quasi-contractual unjust enrichment claim due to the existence of the contract between the parties. However, while a plaintiff "may not recover under both contract and quasi-contract theories, it is not barred from pleading those theories in the alternative where the existence of a contract concerning the subject matter is in dispute." *Swedish Civil Aviation Admin. v. Product Mgmt. Enterprises, Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002). Essentially, at this early stage of the proceeding, this Court will permit Vivimetrix to proceed on both its contractual and quasi-contractual theories of liability. MTA may revisit this issue at later stages of the litigation.[1]

### 2. (Count Three) Breach of Contract – Use Obligations

In one of its three breach of contract counts, Vivimetrix alleges that MTA materially breached the Agreement by using VSS to develop its own competing software product or service, in violation of the Agreement's terms. MTA argues (both as to this count and several others) that the count should be dismissed because Vivimetrix has not adequately alleged damages from the breach. In multiple counts of the Complaint, Vivimetrix alleges having "suffered damages in an amount exceeding $631,085.52," and then in the corresponding *ad damnum* clause, requests "compensatory damages in an amount more than $631,085.52, plus interest."[2] $631,085.52 is the

---

[1] Vivimetrix argues that it also fits another exception in Maryland law permitting it to pursue remedies using theories outside of the contract, as it has pled that at the contract's inception, MTA engaged in fraud by making specific promises while lacking a present intention to perform them. *See Kwang Dong Pharmaceutical Co. v. Han*, 205 F. Supp. 2d 489, 497 (D. Md. 2002); *see also Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 232 (1984) ("Maryland law recognizes a cause of action for fraud predicated upon a promise made with a present intent not to perform it."). But as MTA correctly notes, the allegation Vivimetrix needs to support that argument appears only in paragraph 85 of the Complaint, as part of Count Six, and is not incorporated by reference into Count One. This Court therefore does not find that exception applicable as the Complaint is currently pleaded.

[2] This Court agrees with MTA that Vivimetrix did not include a request for nominal damages in its Complaint and cannot amend its Complaint through motions briefing to add one. ECF 29 at 6–7.

amount MTA allegedly owes Vivimetrix for the unpaid licensing fees, so it does not represent a calculation of the damages Vivimetrix suffered for MTA's alleged reverse-engineering or other fraud or tort claims. However, Vivimetrix alleges that it suffered damages in amount exceeding that number, not that the number coincidentally also represents the damages it suffered from MTA's violation of the Agreement's terms of use. At the motion to dismiss stage, such an assertion of actual damages, even without assigning a precise figure, suffices to state a claim. Moreover, because it can be readily and plausibly inferred that a party would suffer compensable harm from an intentional misappropriation and reverse engineering of its proprietary software, this Court declines to dismiss the count simply because the "benchmark" of harm cited matches the licensing fee remaining unpaid.

### 3.  (Count Four) Breach of Contract – Confidentiality

Vivimetrix's final breach of contract claim asserts that MTA failed to keep Vivimetrix's intellectual property confidential as required by § 15.1 of the Agreement. Specifically, Vivimetrix asserts that MTA's improper use of the VSS to create competing software constituted the breach of this provision. ECF 1 ¶ 73. This Court agrees with MTA that Vivimetrix has failed to allege facts suggesting that the VSS falls within the purview of Section 15.1, which expressly applies to "any document or other [sic] marked as confidential."[3] ECF 1-2. While Vivimetrix and MTA agreed elsewhere in the Agreement that the VSS and related software constitute "valuable and confidential intellectual property," ECF 1-2 § 9, Vivimetrix has not alleged that the VSS or software is "marked as confidential" as required by the language of § 15.1. Count Four will

---

[3] While it certainly appears that the confidentiality provision is not well-drafted, given the obviously missing word or phrase, this Court cannot read in terms that the parties did not include.

therefore be dismissed without prejudice for failure to state a claim, as will Count Eight, the request for permanent injunction, which is predicated on Count Four.

### 4. (Count Five) Unfair Competition

Vivimetrix's unfair competition claim has two aspects: (1) that MTA unfairly marketed "ProfitSight" as proprietary during the period of the Vivimetrix license, and (2) that MTA unfairly competed with Vivimetrix by reverse engineering the VSS in contravention of the Agreement. On the first point, MTA argues that it is implausible that Vivimetrix lacked knowledge of the way MTA was marketing the VSS during the term of the license. Therefore, MTA reasons, Vivimetrix has not plausibly pled the "fraud, deceit, trickery of unfair methods" required for an unfair competition claim. *Baltimore Bedding Corp. v. Moses*, 182 Md. 229, 237 (1943). However, Vivimetrix has alleged that it lacked knowledge, and this Court must accept that fact as true in adjudicating the instant motion. MTA may explore the facts in discovery and re-raise the issue, if appropriate, later in the case.

MTA further argues that Vivimetrix's "unfair competition" claim constitutes "a contract claim in the guise of a tort." Like with the unjust enrichment claim, this Court will save for a later stage of the proceeding the determination of whether Vivimetrix must elect between contract and tort remedies for the harm suffered. At this point, MTA tries to have its cake and eat it too by claiming that Vivimetrix cannot recover under either theory. That position will be rejected and the motion to dismiss Count Five will be denied.

### 5. (Count Six) Fraudulent Concealment

Vivimetrix next alleges fraudulent concealment. The elements of that claim are "the defendant owed a duty to the plaintiff to disclose a material fact, the defendant failed to disclose the fact, the defendant intended to defraud or deceive the plaintiff, the plaintiff took action in

justifiable reliance on the concealment, and the plaintiff suffered damages as a result of the defendant's concealment." *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87,105 (D. Md. 2020) (citation omitted).

MTA argues that Vivimetrix has not pled this fraud-based count with the particularity required by Federal Rule of Civil Procedure 9(b). *See id.* ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") MTA acknowledges, as it must, that the Fourth Circuit employs a "relaxed 9(b) standard" for fraudulent concealment cases. *Corder v. Antero Res. Corp.* 57 F.4th 384, 401–02 (4th Cir. 2023) (permitting "allegations based on information and belief … so long as the allegations are accompanied by a statement of facts upon which the belief is founded."). Vivimetrix has met that "relaxed" standard here, alleging that "Upon information and belief, MTA stopped paying Vivimetrix for its service, because MTA was using the money it could have used to pay Vivimetrix to fund a scheme by which MTA and third-party software developers did, among other things, misappropriate, reverse-engineer, and use for benchmarking, the Vivimetrix Software Service to MTA's competitive and commercial advantage, and by which MTA did itself or with a third-party developer, "create" a competing service which continues to be identified by MTA as its 'ProfitSight.'" ECF 1 ¶ 44. The Complaint further alleges that MTA owed an obligation to "promptly notify the Licensor of any unauthorized use of disclosure of Confidential Information."[4] *Id.* at ¶ 24 (citing ECF 1-2 ¶ 15.3(c)). Collectively, those allegations are sufficient, under the relaxed standard, to set forth a fraud theory: MTA licensed the VVS product and then reverse-engineered or copied it without notifying Vivimetrix of its intent.

---

[4] This Court notes that the Agreement does not appear to define "Confidential Information" before treating it like a defined phrase, creating ambiguity as to the parties' intentions.

9

MTA further contends that Vivimetrix has not sufficiently pled that MTA owed a duty to disclose. But the Complaint alleges that "MTA and Vivimetrix were bound by the Agreement, which created a contractual obligation requiring MTA to disclose material facts related to the use of the" VSS. *Id.* ¶ 84. That allegation, taken as true, would establish the duty required for a fraudulent concealment claim. MTA's motion to dismiss that claim will be denied.

6. **(Count Seven) Torts Arising from Breach of Contract**

Vivimetrix asserts a claim entitled "torts arising from breach of contract" in Count Seven. After reviewing the parties' briefing and the cases cited therein, this Court is persuaded that there is no freestanding claim for "torts arising from breach of contract" under Maryland law. However, Maryland law does provide that, in certain circumstances where a plaintiff asserts a tort arising from a breach of contract, the plaintiff might be entitled to recover punitive damages upon a showing of actual malice. To the extent Vivimetrix relies in part on that theory to support its claimed recovery of punitive damages for its unfair competition or fraudulent concealment tort claims, those claims will proceed to discovery. But the standalone claim in Count Seven is subject to dismissal without prejudice.

7. **Remedies**

MTA asks this Court to opine, at the motion to dismiss stage, on the availability of certain remedies including a constructive trust, punitive damages, or attorney's fees. Given that most of Vivimetrix's claims have survived dismissal, including its fraud-based and tort-based claims, and that Vivimetrix has remaining breach of contract claims potentially entitling it to recovery of its attorney's fees under the Agreement, this Court declines to further address possible remedies at the pleading stage and will leave those questions for summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, MTA's Partial Motion to Dismiss, ECF 27, will be GRANTED as to Count Four (breach of contract – confidentiality), Count Seven (torts arising from breach of contract), and Count Eight (permanent injunction) and denied as to the remaining counts and damage theories. A separate Order follows.


Dated: March 7, 2025                                        /s/
                                                 Stephanie A. Gallagher
                                                 United States District Judge